In the next case on the docket, MSPA Claims v. Tenet and St. Mary's, Mr. Rolnick is here for the appellate and Mr. Lash for the appellees. Mr. Rolnick, you may begin when you are ready. Thank you, Your Honor. May it please the Court, I'm Alan Rolnick for Appellant MSPA Claims 1, LLC, Plaintiff below. Thirty years ago, in 1987, Congress created a cause of action for private parties that make secondary payments to Medicare beneficiaries. That private cause of action hasn't been amended for 30 years and it doesn't say anything about who can sue, let alone who can be sued. And this act was the MSP Act, the Medicare Secondary Payer Act, came into existence seven years before the private cause of action did. Its express purpose was to protect the Medicare trust by making Medicare payments secondary to all other available insurance, court fees, or other primary payers as defined by the statute. Let's just take this one step at a time now. And so, there's an anti-assignment provision in the Hospital Services Agreement providing that FHCP original interest may not be properly assigned. I'm looking at the Hospital Services Agreement and it specifically states, quote, neither party may assign this agreement in whole or in part without the express written consent of the other party. Further, this agreement shall not in the word of the benefit of any successors and interests without the express written consent of the other party, unquote. So how's their standing? Well, there's a few responses to that question, Your Honor. First of all, that's not even an issue on appeal. There was no cross-appeal of the court's rejection of the anti-assignment argument under the services agreement by the appellee. Moreover... That was a standing question, so it is on appeal. It's always here. Well, then we'll go further then. The services agreement was not assigned. Rights of recovery arising under federal law were assigned. Anti-assignment provisions typically do not pertain to the assignment of rights arising under law. They apply to prevent the contracting party from being subjected to performance of that agreement by a party it didn't agree with, by a non-party to the agreement. This kind of assignment exists commonly in commercial law. You see it an awful lot in antitrust cases where one party has assigned its claim to someone who becomes the eventual plaintiff. Moreover, the court's decision on standing had nothing to do with the services agreement, which it rejected out of hand as applicable. The services agreement by itself says that any conflicts between the contract and federal law shall be resolved in favor of the requirements of applicable law. You can't opt out of federal law. King v. Allstate from this court states that. And it's plain that that agreement attempts to opt out of a provider's obligations under the regulations 42 CFR 411.24 and 489.20, which was expressly adopted to make providers who receive secondary payments subject to liability to return them because what providers such as FLE typically did and do is bill everybody and there's no way for an MAO or the government typically to find out that a provider's been paid twice. The second problem that you have, as I see it, is the clear language of this statute, section 1395YB3A, the clear language of that statute in our prior decision in Humana Med versus W.A. Heritage Insurance Company. Any action brought under this subsection of the act by a Medicare Advantage organization must be predicated upon nonpayment by a primary payer, which we don't have here, right? That's correct, Your Honor. The primary payer did make a payment, but let's take a look at the statutory text. B3A, in its entirety, in the middle of this huge government project that involves the MSP Act within the Medicare Act, a huge set of regulations by . . . We understand that, but the question Judge Wilson asked is the statute is clear. It says, a primary plan which fails to provide for primary payment. It doesn't say or. Yeah, it does. It says or appropriate reimbursement. Sure, but it all relates to the primary plan, a primary plan which fails to provide for primary payment or appropriate reimbursement in accordance with. And this case is a case in which the primary plan failed to provide for appropriate reimbursement, just as Western Heritage . . . And you should have sued the primary plan. Except that the statute, which says nothing about who can sue and says nothing about who cannot be sued, cannot be unambiguously construed to bar a private action . . . Wait, the statute isn't ambiguous. It says you have a private cause of action in the case of a primary plan which fails to provide for. It tells you exactly who you can sue. You have a private cause of action for a primary plan that fails to provide for primary payment. Let me ask this, because if you look at the government section, it allows them to sue providers. So Congress knew how to do this, and they did it for the government, but they didn't do it for private cause of action, and that makes sense, right? Because they want hospitals and doctors to be free from a lot of the suits that they're not as worried about with insurance companies. So they set this up so that the government could, and the MAO could not. Your Honor . . . You had very different language. Do you agree with that? No, we don't. This statute does not unambiguously say anything about who can sue, which is what the Western Heritage Court referred to the regulations to answer. It's not unambiguous. The question is, is the statute ambiguous? Statute is ambiguous. This Court's decision in Western Heritage resorted to the regulations in order to determine who can sue and whether an MAO, such as appellant, could have a cause of action in the case of, it doesn't say . . . Even Western Heritage says the primary plan. It doesn't say against the primary plan. And the language of the statute is, in the case of a primary plan that fails to make a primary payment or appropriate reimbursement, either condition triggers that statute. The question on appeal, just as the question below . . . We don't have any circuit, we don't have any circuit law, do we, that says the statute is ambiguous? We have this circuit's law that resorts to the regulatory interpretation in Western Heritage and in the Allstate case. Are those district court cases? Those are your court's cases, Your Honor. That say the statute is ambiguous? They don't come right out and say the statute is ambiguous in this regard. They do, however, obtain guidance from the regulations in both cases. In Western Heritage, the Court, after stating that the cause of action is broadly available in the case of a primary plan, which fails to make appropriate reimbursement or a primary payment, the next paragraph says, we see no basis to exclude MAOs from a broadly worded provision that enables a plaintiff to vindicate harm caused by a primary plan's failure to meet its MSP primary payment or reimbursement obligations. It doesn't just say primary payment obligations. Right, but the only one who has a primary payment or reimbursement is the primary plan under the statute. That's all it says. Except that the private cause of action expressly incorporates provisions that are not within it and in deciding Western Heritage, this court incorporated another provision. Western Heritage was about who an appropriate plaintiff is, where it's not clear from the text. It was about who is an appropriate plaintiff, whether or not MAOs have parity of recovery rights with Medicare. That's what it was about. And it was a case in which the primary plan had made a primary payment, but it hadn't made appropriate reimbursement. And the court goes on to state that even if that plan had made a primary payment, it would not extinguish the MAO's rights under the private cause of action to demand appropriate reimbursement from the primary payer. This case is exactly the same situation. We could have sued Allstate under 1395Y3A because it's never made any reimbursement. And under the plain language of Western Heritage, Allstate would be subject to liability for double the amount of the secondary payment plus interest. I see I'm running out of time. Actually, I'm over time. You are, but let me ask you another question. Let's go back to standing for a minute. What did you allege as an injury, set aside the anti-assignment provision, but what is the alleged injury for standing purposes? We have to admit, Your Honor, the complaint was rather inartfully drafted. And the injury alleged in the complaint was the failure to pay an amount that was suggested by the right to charge provision, which has since been held to not govern the damage claims. And we didn't have to allege any measure of damages. But if you take into consideration the modification of the government's right of action against a provider, which was never done in the case of the private cause of action, you take that into account. You got your money back. So what is the injury for standing? We didn't get any interest. That repayment of the secondary payment by the provider was made seven months after the All right. And assuming you're entitled to interest, where is that alleged in your complaint? Paragraph 54, Your Honor. And that's where you say you're entitled to double damages, quote, plus accrued interest? Correct. You don't say what that interest is on or what it arises out of? No, but we could correct the complaint on remand. The plain fact is that that's not a fatal error. We have standing under Spokio and Maransky because this is analogous to an ages old common law action for money hadn't received. We were made involuntary lenders by the MSP Act for 60 days to anyone that we made a secondary payment to. After 60 days, they had a liability to pay that money back. I understand that Judge Spar says that can't be found in the statute. The 60 days can't either. It just says the secretary may seek interest after 60 days. It doesn't say that they have to pay, right? No, it doesn't say that. It says the secretary may seek interest. That's absolutely correct. But of course, that 60 day grace period was held applicable to the claim in Western Heritage by this court. And that provision comes out of B2B2, not B2B1 or any other provision that that statute the private cause of action expressly incorporates. Moreover, we'd also point out that everybody assumes that this claim is governed by a three year statute of limitations. Wait, so this provision B2B2 wasn't incorporated? Well, this court resorted to it in all state to find the demonstrated responsibility requirement that it applied to the cause of action. They used it to interpret it, but it wasn't, it isn't specifically incorporated by Congress, correct? No, no, it is not. But the court made reference to it, just as it made reference to the provision in B2B2. That was its reasoning, not its holding, right? Well, I suspect that it's fair to say that it is part of the holding insofar as the court held that after 60 days, the primary payer is subject to liability for failure to make a primary payment or appropriate reimbursement. That is part of the holding. Okay. Thank you, Mr. Rolick. We'll hear from Mr. Lash. Thank you. Good morning, Your Honors. May it please the court, Alan Lash on behalf of the appellees. From our perspective, the district court got it right in all respects. At its heart, I think Judge Wilson, as you noted, this is a contract case. The relationship between our client and the MAO is based in contract. And the contract governs the duties and responsibilities of those parties. And this court has expressly recognized in the care improvement case, and I know that well because I argued that case about a year and a half ago, and this court made explicitly clear that with respect to a contract between a Medicare Advantage organization and a provider like a hospital, like the appellee, that the Medicare Act explicitly allows contract providers and MAOs to define the terms of their own agreements without reference to the Medicare regulations. And there are very, very few exceptions to that, really dealing only with prompt payment. In short, the contract defines all of the rights and responsibilities here between the underlying Medicare Advantage organization, which is a private for-profit entity. It is not the government. It is not CMS. It is a private for-profit entity. And the agreement provides for all the services that will be provided by the hospital to the enrollees in the Medicare Advantage organization. It sets out the reimbursement terms. It provides specific procedures for refund of overpayments. What about their argument that you didn't cross-appeal on the contract? I think it's an irrelevant issue, Your Honor. I think as you pointed out, this court on review can look at all issues. And I think the contract issue was only looked at with respect to standing to assert the MSP claim. I think that was the distinction that the court was looking at. But at its heart, this case is a contract case. And what's clear, contrary to what my colleague stated in response to your question, with respect to the primary plan, the primary plan was Allstate. The primary plan made payment in full. So there was payment by the primary plan. There was also payment to the hospital. And the hospital refunded that payment in full. The refund was made within seven months of payment. It was made before the assignment to the appellant. And it was made two years. The repayment by the hospital was made two years before the lawsuit was even filed below. So as a threshold matter, there was no claim by the MAO at the time of assignment because repayment in full had been made. And at the time the lawsuit had been filed, neither the MAO, if the assignment is invalid, or the plaintiff had any claim because payment in full had been made, there was no claim. The repayment complied with the contract. And clearly, again, this court has made it abundantly clear that contracts between providers and private Medicare Advantage organizations are not subject to Medicare regulations except in very, very limited circumstances. I next want to touch upon the MSPA Act claim and some of the comments that counsel made and judged to address some of your questions. The Western Heritage case, I think, was very clear in terms of what the cause of action that could be available to a MAO is. The cause of action is very clear. The statute is unambiguous and it provides, as the Western Heritage Court noted, for three essential requirements. Number one, the defendant must be a primary plan. Well, that's not the case here. It is undisputed that the hospital is not a primary plan. The second essential element to state a claim under 3A in Western Heritage is that the primary plan fails to make payment. And the complaint at paragraph 48 unambiguously states that Allstate, as the primary payer, was billed and paid $1,251.60 to St. Mary's, the hospital. So the second element is not met. Last, there must be damage. There must be injury, in fact. And again, there was no injury. There is no damage. Repayment was made by the hospital in full, within seven months, which by the way, fit within the time frame of the contract, which had a 12-month repayment of overpayments, or refund of overpayments, or payment of underpayments. Is that before the lawsuit was filed? Absolutely. About two years before the lawsuit was filed, the payment was made. So there was no cause of action available to anyone at the time the lawsuit was filed. There was no cause of action available to the MAO. And similarly, there would have been no cause of action available to the government. The government, even if you can make this statutory connecting of dots argument, the hospital, because payment had been made in full. There was no claim. There was no damage. So we believe very clearly that the appellant has no standing. And equally important, there is no claim under Section 3A of the MSP Act. I think it is completely inconsistent with statutory construction principles to suggest that somehow 3A incorporates the government's cause of action in 2B, putting on equal footing a private party and the government. I think if Congress fully intended to do that, it knew how to. It's not that complicated to say that the rights are coextensive. The statute says nothing of the sort. There are plainly distinctions between the government's cause of action and a private right of action. And none of the elements of the private right of action are satisfied. With respect to the appellant's suggestion that CMS regulations somehow inform the court's decision, again, we respectfully disagree. CMS regulations are only relevant and applicable to the extent the statute is ambiguous. This statute is not ambiguous. It is plain and it is clear. And there can be no resort to the regulations to create a private right of action or a cause of action where the statute does not provide for one. This court also in Western Heritage made that abundantly clear, specifically noting that although the Secretary, HHS, believes that MAOs may sue in federal court to recover reimbursement from a primary plan, MAOs have no cause of action absent a statutory basis. And here the only statutory basis arguably could be found in 3A. And none of the essential elements for stating a statutory cause of action in 3A are met. So here, again, we have a situation where a primary plan may payment as a threshold matter that defeats the claim. We have a refund in full by the hospital within months after payment is made. And I'll note, without demand. There was no demand that was made. The hospital repaid it voluntarily. And the complaint alleges no demand. And there was payment in full. There was payment by the primary plan and repayment by the hospital. With respect to the notion that interest conceivably could be the basis for a claim, that argument, too, fails for several reasons. Number one, the right to collect interest belongs solely to the government. Number two, an interest may, must be, it's voluntary. It is not mandatory. And number three, there must be an election. The argument that that was incorporated into this provision by W Heritage? It is not incorporated, Your Honor. The only issue that is somehow referred into 3A is the reference to when the primary plan's obligation is triggered. To inform and interpret 3A. And that was with respect to demonstrated responsibility. But there is, I believe, no way this Court's decision in Western Heritage can be read to wholesale incorporate the government's cause of action entirely into 3A. What about double damages? Double damages are not available. Double damages by 3A in the statute would only be available against the primary plan. Only. And I think your question to counsel saying couldn't... Wait. You have to just assume that you're a proper defendant. Could they seek double damages? No, they could not. They could not. Why? Well, I find it difficult to assume that we're a proper defendant because the statute says that it applies only to a primary plan. It is clear we are not a primary plan. And the double damages remedy is solely with respect to a primary plan. That's all it says. So to... If we were to read in what the language from the government section, from any entity that has received payment from a primary plan into your section, I know it's not there, but assume we read it in, then you would concede double damages would be available. No, I would not for several reasons. Number one, if hypothetically we were to incorporate the government's cause of action into the private right of action, the first step in that analysis, and the language is very clear, in order to recover payment made under this subchapter, well, at the time the government or any other party could bring a cause of action, payment had already been made. So as a threshold matter, the cause of action could not have been asserted because payment was made two years prior to the institution of the lawsuit below. And B2 also, B3 also references, an action may not be brought with respect to payment owed. Well, there would be no payment owed at the time the action was initiated. You have to assume two things. In the 60-day window, they're right about this. Because what you seem to be arguing really is we're not the real party in interest. They don't have the right to bring this action as to standing, not as to the statutory interpretation. I think that certainly we are not the right party in interest, but I think it goes beyond that. I think they have no standing, they have no claim, because the payment was made by the primary plan, and because the recipient of the payment refunded it prior to any request for interest, prior to any cause of action being initiated, and the language in B3 says the government may, in accordance with 3A, collect double damages against such entity, may. But if there's been a repayment at the time the action is initiated, there is no claim at all. There could only conceivably be a claim had there been no repayment at all, but here we know that there's been a primary plan payment, and we know that there's been repayment in full. There is no damage. There was no interest that would accrue. That, again, belongs to the government, and it must be made by election, and we know that neither of those things occurred here. And at the time the lawsuit was filed, payment had been made. And, in fact, prior to the assignment to this plaintiff below, payment had been made. So under any stretch, whether you look at B3 or if we engage in hypotheticals and assume certain facts that are not true and contrary to what's in the record, even under that scenario, there is no claim. There is no right to seek double damages or interest. There is nothing. There is no standing, and there is no substantive claim under any statute against the hospital. I don't think so, Your Honor. I think that we have a situation here where a complaint was filed first in state court, then in the district court. It was amended once. It was amended twice. At this point, we've got three or four strikes, and at that point, based on the allegations of the complaint and based on the statements that were asserted in the motion for leave to file the second amended complaint, that this was it. These were the facts in their entirety that the court properly determined that any further amendment would be futile. That's why I'm asking. It's because we said no jurisdiction and with prejudice are mutually exclusive. I think the court also found, though, that the claim failed to state a cause of action under 12b-6. And the court... I'll get to that if there's no standing. I don't understand. If you don't have jurisdiction, you can't decide the merits. I think the court found that the merits, it looked at both issues. It looked at the standing issue, and it looked at the substantive claim and concluded that on a substantive basis, the claim... Does a court without jurisdiction have authority to decide a substantive claim? I think both issues could be looked at simultaneously. I think this court, in reviewing, could look at the merits of the claim from a 12b-6 standpoint and conclude that there is no claim and there could be no amendment that would satisfy a claim. An amendment was... Is there a proposition anywhere in the US that a court without jurisdiction can decide the merits? I don't, Your Honor. And we recognize that that may be an issue, but I think the key point here is that from a substantive standpoint, and this court can look at that issue de novo from a substantive standpoint and conclude that as a matter of law, there is no claim that could be asserted, there was no claim properly asserted, and dismissal with prejudice is appropriate. Any amendment would be futile because under no set of facts could this plaintiff assert any claim statutorily against the hospital. I see my time is up. I thank you, and we request that the court affirm the district court's dismissal with prejudice. Thank you. Thank you, Mr. Lash. Mr. Rolnick. Briefly, Your Honors. The contract is a red herring. It provides expressly the conflicts between it and federal law resolved by reference to federal law. The contract purports to change the deadline and impose discovery obligations on a party that isn't going to know that it has a right to recover a secondary payment because it won't know that a primary payment has been made. Moreover, let's just move on for a minute. This is not a contract case. We would commend the court's own orders in Western Heritage and Allstate as repeatedly making reference to regulations that talk about functional parity as a goal of the statute, as a goal of the regulations, and as part of this framework in which these parties try and conduct their business. The court did incorporate more than 3A says it expressly incorporates. In both of those cases, it incorporated or, as Judge Trappard said, made reference to or consulted regulations and the government's own rights of recovery under B2B to inform its decision. Western Heritage was a case in which... We don't look at the regulations. If we look at the statute and determine that the language of the statute is clear, though, right? That's absolutely correct, Your Honor, but one goes back to the fundamental question which this court raised on the front end in Western and which the Paris Blank Court raised on the back end. The statute doesn't say who may sue. It doesn't say who may be sued. It certainly doesn't say who may not be sued. The only thing it says is that in the case of... In conjunction with the rest of the statute, you do that before you ever consult the regs, and when you read the government provision, it's clear that Congress added this language, that the government can recover from any entity that has received payment from a primary plan or from the proceeds of the primary plan's payment to any entity. Same time, they didn't put that in this provision. They put it in that provision. We can read the difference there, and the Supreme Court's commanded us to do so and make sure it has significance, correct? That's absolutely true, Your Honor. This cause of action was passed by Congress 10 years before MAOs came into existence. Congress was not clairvoyant. It wrote a very broad and open-ended private cause of action that would embrace all situations in which a private party made a secondary payment in the case of a primary payer's failure to make a primary payment or appropriate reimbursement. And, in fact... Isn't this... I'm sorry to interrupt you, counsel. Isn't this an odd case where you got payment two years before without requesting it, and now you're suing the hospital? I mean, it just strikes me as, like, hospitals provide a lot of good services. They serve the indigent. They do all this. You're dragging them through court for something they did voluntarily two years ago. They paid you back. Except they didn't pay back the interest, and Western makes clear that all state is still subject to double damages liability and interest from then until now. That's the plain reading of this cause of action 3A. Moreover, Western itself expressly holds that the MAO... I mean, it seems odd. Maybe I'm wrong, but it just seems odd to me that someone who voluntarily pays you back, you don't ask for it. You sign a contract saying you'll give them notice within 12 months. They comply with the contract. Contracts in federal law coexist hundreds of cases. There's 11 circuit cases that talk about this. Couple of... Go ahead. I'm sorry. I want to try and break this down. First of all, this is not a typical case. You're absolutely right. The typical case is one in which the provider just keeps both payments and never says anything to anybody. That was the Bayfront case in which the complaint was sustained, but interlocutory appeal has been granted. That's also... There was a case in the middle of the district recently that was dismissed on similar grounds and might have been a Xerox of this court's opinion by that court. The lower court's opinion, that is, where the provider simply kept both payments to this day on the theory that, we don't have to pay you back. If it was Medicare, we would, but we don't have to pay you a nickel. You're absolutely right that this is atypical insofar as the provider did make a reimbursement of the primary payment. But when we come back to the statutory text on which this case rests, it can't be persuasively argued that a statute that fails to provide who may sue and fails to provide who may be sued unambiguously excludes, unambiguously plain-meaning language construction excludes a class of persons who might otherwise be subject to liability under the statute. We understand that MAOs didn't exist when this cause of action was passed, but it's never been amended. It has always provided for double damages from 1987 until now. And as we noted, and as this Court has said, Western Heritage remains subject to liability to that MAO, even though it made reimbursement, even though it made a primary payment, because it did not make appropriate reimbursement, which, by the way, was another term that was found in B2B2, which speaks to the government's rights, and was used to illuminate the language in B3A. The Court is correct in concluding that a lack of standing does not support a dismissal with prejudice. Moreover, we'd submit that the... what drove this dismissal with prejudice was the Court's conclusion that the cause of action didn't exist. And for that reason, the futility argument is a non-starter if the cause of action does exist. We note that if a statute is silent or ambiguous, courts make reference to regulations. This statute is silent. This provision is completely silent. Thank you, Your Honors. All right, thank you. Court is in recess until 9 o'clock.